UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| JOSEPH L., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-1117-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Joseph L. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 11).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 9. Plaintiff also filed a reply brief. *See* ECF No. 10. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 9) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for DIB on September 10, 2019. Tr. alleging disability beginning May 1, 2018 (the disability onset date), due to a variety of musculoskeletal and mental impairments. Transcript ("Tr.") 22, 76, 185-88, 214. Plaintiff's claim was denied initially on January 8, 2020, and upon reconsideration on July 1, 2020, after which he requested an administrative hearing. Tr. 22. On December 21, 2020, Administrative Law Judge Alexander

Klibaner ("the ALJ") conducted a conducted a telephonic hearing,[1] at which Plaintiff appeared and testified and was represented by Christopher J. Grover, an attorney *Id*. Connie Standhart, an impartial vocational expert, also appeared and testified at the hearing. *Id*. Upon the advice of his attorney, Plaintiff amended his alleged onset date to December 24, 2019. *Id*.

The ALJ issued an unfavorable decision on January 14, 2021, finding Plaintiff not disabled. Tr. 22-37. On August 27, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's January 14, 2021 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 22.

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

3

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his January 14, 2021 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since December 24, 2019, the amended alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; sacroilitis; degenerative joint disease of the right knee status post arthroscopy; degeneration of the right acromioclavicular joint; obesity; depressive/bipolar disorder; anxiety disorder; and attention deficit hyperactivity disorder ("ADHD") (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[2] except the claimant can sit for four hours in an eight-hour workday; can stand for four hours in an eight-hour workday; can walk for one hour in an eight-hour workday; needs to switch positions every half-hour on average; can occasionally reach overhead with the right, dominant arm and frequently in all other directions; can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; is able to remember, understand, and carry out simple, routine tasks, defined to include unskilled tasks that take no more than a month to learn the techniques, acquire the information, and develop the facility needed for average performance of those tasks; can carry out those tasks for two-hour periods throughout a 40-hour workweek; is able to make simple work-related decisions; can tolerate occasional interactions with supervisors; can tolerate occasional, simple changes in the work routine..

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 25, 1969 and was an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

8. The claimant has a limited education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 24, 2019, the amended alleged onset date, through the date of this decision (20 CFR 404.1520(g)).

Tr. 22-37.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits filed on September 10, 2019, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 37.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ's physical RFC for light work was not supported by substantial evidence because the ALJ improperly evaluated the medical opinion evidence. *See* ECF No. 8-1 at 12-15. Specifically, Plaintiff argues that the sit/stand option included in the RFC was inconsistent with the opinion of treating physician Cristina Demian, M.D. ("Dr. Demian"), and the exertional requirement was inconsistent with the opinion of consulting physician James Faulk, M.D. ("Dr. Faulk").[3] *See id*. at 12-14. Accordingly, argues Plaintiff, it was "unclear" that Plaintiff was capable of performing light work, and due to his age

---

[3] The Court notes that Plaintiff's brief generally focuses on the RFC finding's restriction to light work, which included limits on lifting and carrying, walking, standing, and sitting but does not challenge limits on reaching, climbing, balancing, stooping, kneeling, crouching and crawling. *See generally* ECF No. 8-1. Thus, the Court declines to address these issues in this opinion. Furthermore, Plaintiff has waived any arguments in this regard. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

category, the grid rules for sedentary work would have mandated a *per se* finding of disability. *See id*. at 14-15.

Plaintiff's second point of error contends that the ALJ purported to be more persuaded by the reviewing opinions of state agency psychiatric consultants H. Tzetzo, M.D ("Dr. Tzetzo"). and S. Juriga, Ph.D. ("Dr. Juriga"), than by the opinion of psychological consultative examiner Todd Deneen, Psy.D. ("Dr. Deneen"), but the ALJ's RFC did not incorporate the mental limitations opined by Drs. Tzetzo and Juriga. *See* ECF No. 8-1 at 15-17.

In response, the Commissioner argues that the ALJ's physical RFC finding was supported by substantial evidence and was consistent with the portions of Dr. Demian and Dr. Faulk's opinions the ALJ found persuasive. *See* ECF No. 9-1 at 9-14. The Commissioner similarly argues that the ALJ's mental RFC finding was consistent with the portions of Dr. Tzetzo and Dr. Juriga's opinions the ALJ found persuasive and was supported by substantial evidence, including othe medical opinion evidence, providers' observations, and Plaintiff's own statements. *See id*. at 14-21. Further, argues the Commissioner, the RFC need not mirror a medical opinion, and the ALJ was not bound to adopt any opinion in its entirety. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds that the ALJ's conclusion that Plaintiff had the RFC to perform a range of light work, subject to certain exertional, postural, manipulative, and mental restrictions was supported by substantial evidence, including physical examination findings,

imaging results, Plaintiff's testimony about his symptoms, Plaintiff's reported daily activities, and the opinions of consultative and treating medical sources. Contrary to Plaintiff's contention that the RFC finding was invalid because it was inconsistent with medical source opinions, the ALJ either properly incorporated said opinions into the RFC finding or explained why they were not persuasive. Accordingly, the Court finds no error.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional

capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27,

2017). Plaintiff filed his application on September 10, 2019, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) Supportability; (2) Consistency; (3) Relationship with the claimant (which includes: (i) Length of the treatment relationship; (ii) Frequency of examinations; (iii) Purpose of the treatment relationship; (iv) Extent of the treatment relationship; and (v) Examining relationship); (4) Specialization; and (5) Other factors. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she

considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC finding that Plaintiff could perform a range of light work with certain limitations. Tr. 28. In making this determination, the ALJ considered the objective medical evidence and other evidence in accordance with 20 C.F.R. § 416.929 and SSR 16-3p, as well as the opinion evidence in accordance with the requirements of 20 C.F.R. § 416.920c. Tr. 28-35.

In challenging the ALJ's analysis of the medical opinion evidence, Plaintiff argues that the RFC finding did not precisely match any one of the medical opinions. *See generally* ECF No. 8-1. However, the ALJ was not required to rely on an opinion that mirrored the RFC, as Plaintiff argues. *See id*. As the Second Circuit recently reiterated, the RFC does not need to exactly correspond to a particular medical opinion. *Schillo v. Kijakazi*, 31 F.4th 64, 77-78 (2d Cir. Apr. 6, 2022) (affirming where the ALJ declined to adopt the limitations set forth in three treating source opinions, and the RFC finding did not match any opinion in the record). Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56).

The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

11

Furthermore, there is no requirement that an ALJ's RFC finding be based on a medical opinion at all. *See, e.g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (summary order) (affirming ALJ's physical RFC assessment based on objective medical evidence); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (affirming where ALJ rejected sole medical opinion in record speaking to mental); *John H. v. Comm'r, Soc. Sec.*, No. 1:20-CV-921-DB, 2021 WL 2355107, at *4 (W.D.N.Y. June 9, 2021) ("Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional"); *see also Bliss v. Comm'r of Soc. Sec.*, No. 10-1558, 406 F. App'x 541, 542 (2d Cir. 2011) ("[T]he ALJ need not involve medical sources or claimant's counsel in his deliberative process or assessment of the evidence"); *Julie W. v. Comm'r of Soc. Sec.*, No. 20-CV-01042, 2021 WL 6064389, at *7 (W.D.N.Y. Dec. 22, 2021) ("an RFC may be supported by substantial evidence, even if it does not correspond to any particular medical opinion") (internal citations omitted).

Thus, opinion evidence is only one type of evidence an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record); *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

In support of his physical RFC finding, the ALJ relied on a variety of evidence, including medical treatment records; examination and/or overview reports from multiple consulting physicians containing observations and/or opinions; medical imaging results; Plaintiff's statements about his symptoms; and Plaintiff's statements about his activities. First, the ALJ acknowledged Plaintiff's testimony that he could walk ten minutes before needing to rest, needed to change position every five minutes between sitting and standing if he were required to do either, sometimes used a back brace, could not perform household chores due to his back pain, and spent 90 percent of his day lying down. Tr. 29, 44-75, 51, 53, 55, 57-58, 64, 230-243.

The ALJ further noted Plaintiff's history of spinal issues, which included a laminectomy in 2003 and a slip and fall accident in 2017, both prior to Plaintiff's alleged onset date of December 24, 2019. Tr. 29, 445, 506. The ALJ additionally noted a lumbar spine MRI taken in November 2017, which showed moderate impairments: disc protrusion at L5-S1 abutting the ventral margin of the thecal sac and displacing the left S1 nerve root, but no significant herniation or spinal canal narrowing. Tr. 29, 445. As the ALJ noted, Plaintiff was able to return to light duty work in late 2017. Tr. 29.

The ALJ also considered other objective evidence regarding Plaintiff's back impairment, including physical examination observations by various physicians, several of which showed normal gait. Tr. 26, 30, 867, 893; *see also* Tr. 804, 818, 924. The ALJ noted that, beginning in September 2018, Plaintiff attended physical therapy for treatment of sacroilitis and achieved benefit from his therapy. Tr. 30, 305-13. Plaintiff also engaged in pain management in late 2018 and 2019. Tr. 30, 382-432. An October 2018 examination noted that Plaintiff rated his pain at 5 out of 10 in severity, and examination showed body mass index of 38. Tr. 30, 411. Plaintiff continued to engage in pain management into 2019, treated by prescription narcotics for pain

management as well as trial of injection therapy that reportedly did not provide benefit. Tr. 30, 433-658.

The ALJ observed that in January 2020, Plaintiff attended his first follow-up visit since his amended alleged onset date, and an examination showed no significant abnormalities, including well-balanced gait and no edema of the lower extremities. Tr. 30, 891, 893. The ALJ further noted that Plaintiff engaged in physical therapy in early 2020 (Tr. 876-920), but the record did not contain other treatment notes pertaining to his medical conditions. Tr. 30.

Overall, the ALJ concluded that the evidence reflected a history of only mild to moderate symptoms with partially effective treatment, which did not tend to support Plaintiff's allegations of disabling impairments. Tr. 31. As the ALJ noted, the diagnostic studies and physical examinations revealed relatively minor abnormalities. *Id*. The ALJ further noted that the majority of Plaintiff's medical treatment, including several independent medical examinations performed in conjunction with Plaintiff's worker's compensation claim predating the amended alleged onset date, documented pain complaints and some abnormal findings on examination. However, the ALJ also noted that, by contrast, a December 2019 consultative examination by Russell Lee, M.D. ("Dr. Lee"), was relatively benign, showing abnormal straight leg raise testing and reduced range of motion of the lumbar spine but also normal range of motion of other joints, ability to perform full squat, ability to walk on heels and toes, full 5/5 strength, and normal sensation. Tr. 867-68. Likewise, a January 2020 follow-up visit showed no significant abnormalities on examination. Tr. 893. Based on the foregoing, the ALJ reasonably concluded that the objective medical evidence during the alleged period of disability did not support disabling limitations. Tr. 31.

The ALJ also considered Plaintiff's four-day vacation to Las Vegas in June 2020 and his self-reported activities of daily living, including personal hygiene, shopping for necessities, and preparing simple meals. Tr. 33, 42-75, 230-243, 57, 65, 231-32, 236. Notably, Plaintiff told his

therapist that he went swimming during his trip to Las Vegas, and he planned to go camping with his cousins. Tr. 1057. The ALJ found that these activities, as well as the rest of the foregoing evidence, indicated that Plaintiff's impairments were less limited than he had alleged. Tr. 33. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)).

In addition, the ALJ supported his assessment of a limited range of light work with several medical opinions finding that Plaintiff could lift up to 20 pounds. Tr. 29-30.  For example, in July 2018, orthopedic surgeon Kevin Scott, M.D. ("Dr. Scott"), indicated that Plaintiff could do a light duty job with no lifting greater than 20 pounds. Tr. 575. In January 2019, orthopedic surgeon Daniel Carr, M.D. ("Dr. Carr"), indicated that there were no contraindications to Plaintiff working and released him for full duty work with no restrictions but recommended continued physical therapy. Tr. 552. In June 2019, Dr. Demian completed a work restriction form indicating that Plaintiff could return to work with a lifting restriction of no more than 20 pounds. Tr. 642. Furthermore, an August 2019 examination report indicated that Plaintiff could perform "sedentary to light duty" work (Tr. 593), and a December 2019 report from Dr. Lee indicated that Plaintiff required moderate limitations on lifting (Tr. 869).

As noted above, Plaintiff contends that portions of the RFC finding were inconsistent with certain medical opinion evidence. *See* ECF No. 8-1 at 12-15. Plaintiff first takes issue with the sit/stand option included in the RFC finding, arguing that it was inconsistent with the opinions of treating physician Dr. Demian. *See id*. at 12-13. In August 2017 and June 2019, Dr. Demian opined

that Plaintiff could perform light duty work, "limited to lifting 10-20 pounds non-repetitively, limiting frequent bending and twisting, restrict[ing] work to no more than 8 hours per day, and alternat[ing] walking/standing with sitting as needed for comfort." Tr. 455, 863. The ALJ found that the opined need to alternate between sitting and standing was consistent with the objective medical evidence and Plaintiff's testimony, and accordingly, specified in the RFC finding that Plaintiff "need[ed] to switch positions every half hour on average." Tr. 28, 34, 51, 53. Also consistent with Dr. Demian's opinion, the ALJ's RFC finding limited Plaintiff's lifting and carrying to 20 pounds, occasionally (*i.e.*, light work), and imposed the postural limitations of only occasionally balancing, bending, stooping, kneeling, and crawling. Tr. 28.

Plaintiff faults the ALJ for "failing to explain how he arrived at his specific sit/stand option where he purported to credit Dr. Demian's opinion, which was actually more restrictive than the limitation the ALJ included in the RFC." *See* ECF No. 8=1 at 12. This statement is incorrect. First, given that Dr. Demian did not define a precise time interval meant by the expression "as needed" (Tr. 455, 863), the Court finds the RFC limitation that Plaintiff "needs to switch positions [between sitting and standing] every half-hour on average" to be a reasonable and permissible interpretation of "as needed." Tr. 28. Furthermore, the ALJ's sit/stand option is not inconsistent with Dr. Lee's assessment that Plaintiff had moderate limitations for prolonged sitting, standing, and/or walking great distances. Tr. 869. Moreover, this interval reflected Plaintiff's testimony regarding his need to change position, which did not indicate any greater frequency. *See* Tr. 51, 53. Furthermore, the limitations in the RFC were more restrictive than any sitting/standing/walking limitations assessed in other medical source opinions that did not include an allowance for changing position.

While Plaintiff may prefer a different interpretation of "as needed," the substantial evidence standard of review focuses on the ALJ's findings, not the alternative findings that Plaintiff would prefer. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If the evidence

is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *see also Barrere v. Saul*, 857 F. App'x 22, 24 (2d Cir. 2021) (noting that where "there is substantial evidence to support either position, the determination is one to be made by the factfinder").

Plaintiff cites *Sesa v. Colvin*, 629 F. App'x 30, 32-33 (2d Cir. 2015), to support his argument that "the ALJ's failure to incorporate Dr. Demian's actual limitation, without explanation, was reversible error." *See* ECF No. 8-1 at 12-13. *Sesa*, however, is easily distinguishable from the present case. In *Sesa*, the Second Circuit remanded the ALJ's decision because the ALJ did not discuss reaching in the RFC finding at all and purported to rely on a Grid rule to arrive at the conclusion that the claimant was not disabled, even though a medical opinion had noted significant reaching limitations. *See Sesa*, 629 F. App'x at 32-33. Here, the ALJ clearly did not fail to address a significant impairment altogether and did not claim to rely on a Grid rule. Rather, the ALJ here adopted one portion of Dr. Demian's opinion and declined to adopt another portion, which he is permitted to do. *See Schillo*, 31 F.4th at 78. Based on the foregoing, Plaintiff's argument that the sit/stand option formulated by the ALJ was erroneous because it was "less restrictive" than Dr. Demian's opinion is unpersuasive.

Plaintiff's contention that the RFC finding is flawed because its exertional requirement was inconsistent with Dr. Faulk's opinion fails for similar reasons. *See* ECF No. 8-1 at 13-14. To the extent there was any minor inconsistency between the RFC and Dr. Faulk's opinion, such was properly explained by the ALJ and was supported by substantial evidence. Furthermore, as previously explained, the ALJ was not bound to adopt the entirety of Dr. Faulk's opinion.

In discussing the multiple medical opinions rendered for the purposes of evaluating Plaintiff's worker's compensation claim, the ALJ considered these opinions as a single source, finding them somewhat persuasive. Tr. 34, 550-53, 573-76, 592-98, 862-63. The ALJ noted that

these opinions, all issued from 2017 through 2019, prior to Plaintiff's amended onset date, and directly relevant to worker's compensation issues, were supported by a physical examination as well as medical record review and consistent with each other and the record, but the ALJ also noted that these opinions were of reduced evidentiary value due to their predating the relevant period. Tr. 34; *see* 20 C.F.R. § 404.1520c(b)(1). However, the ALJ explained that he was "more persuaded" by the August 8, 2019 opinion of Dr. Faulk because it was closest in time to the relevant period; it was supported by his examination; and it was consistent with the record as a whole. Tr. 34.

Dr. Faulk indicated that Plaintiff could do a "sedentary to light-duty job" (Tr. 593, 598), lift up to 15 pounds (592, 598), and could perform sedentary work, defined as exerting up to 10 pounds occasionally and/or a negligible amount of force frequently …" (Tr. 593). The ALJ found that Plaintiff could perform the lifting and carrying requirements of light work, *i.e.*, frequently lifting up to ten pounds and occasionally lifting up to 20 pounds. Tr. 28. Thus, both Dr. Faulk and the ALJ determined that Plaintiff could perform work more demanding than the full range of sedentary work but less demanding than the full range of light work. Tr. 34. However, the ALJ reasonably found the portion of Dr. Faulk's opinion imposing a 15-pound limit on lifting and carrying less persuasive, as it was not supported by record evidence. Indeed, the 15-pound limit was also inconsistent with the other medical opinions. Tr. 34, Tr. 575, 583, 552, Tr. 210.

In sum, there is no merit to Plaintiff's contention that the ALJ merely "cherry picked" favorable evidence from Drs. Demian and Faulk. Rather, the ALJ's RFC findings reflect a reasonable interpretation of the entire record, including the opinions of Drs. Demian and Faulk, as well as other sources in the administrative record, such as treatment records and hearing testimony. Using these opinions and data points, the ALJ reasonably laid out with specificity Plaintiff's

18

physical capabilities. *See, e.g.*, *Schillo*, 31 F.4th at 78. Accordingly, the ALJ's physical RFC finding was supported by substantial evidence, and the Court finds no error.

Plaintiff's second point of error similarly contends that the ALJ's mental RFC finding improperly diverged from medical evidence that the ALJ found relatively persuasive. *See* ECF No. 8-1 at 15-17. For similar reasons, Plaintiff's contention again lacks merit. Just as with the opinions supporting the physical RFC finding, the inconsistencies noted by Plaintiff are negligible, and, in any event, since the RFC need not mirror a medical opinion, the ALJ was never bound accept to the entirety of any of these opinions.

Three medical providers opined regarding Plaintiff's mental capacity. On December 18, 2019, Dr. Deneen performed a psychological consultative evaluation and issued a report. Tr. 25, 872-75. On examination, Plaintiff presented with a cooperative demeanor, fluent speech, coherent thought process, euthymic mood, full orientation, intact memory, and good insight and judgment. Tr. 873-74. However, he also displayed below-average intellectual functioning; only fair social skills, personal hygiene and grooming; and an anxious affect. *Id*. On the basis of his examination and interview with Plaintiff, Dr. Deneen concluded that Plaintiff had mild limitations in the specific skills of sustaining concentration and performing a task at a consistent pace; sustaining an ordinary routine and regular attendance at work; regulating emotions; controlling behavior; and maintaining well-being. Tr. 32, 874. However, according to Dr. Deneen, these problems were not significant enough to interfere with Plaintiff's ability to function on a daily basis, or to implicate any occupational restrictions. Tr. 874.

As the ALJ explained, he was more persuaded by the opinions of the state agency psychiatric consultants Dr. Tzetzo and Dr. Juriga (which were identical in substance) than by Dr. Deneen's opinion, Tr. 35, 77- 91, 92-110. Dr. Tzetzo and Dr. Juriga found that Plaintiff was limited to only simple work due to his severe mental impairments, characterized by moderate limitations

in the functional areas of understanding, remembering, or applying information; concentration, persistence, or maintaining pace; and adapting and managing himself. Tr. 35, 82, 100. These consultants also found that Plaintiff had a mild limitation in interacting with others. Tr. 35, 82, 100. The ALJ reasonably found Dr. Tzetzo and Dr. Juriga's opinions partially persuasive. Tr. 35. He noted that the opinions were largely consistent with the overall weight of Plaintiff's mental health record, including psychiatric treatment notes showing relatively benign findings and the medical opinion evidence. Tr. 27, 35. For example, the ALJ noted mental status findings of cooperative behavior, full orientation, normal speech, normal thought process and content, and, at times, intact attention and concentration. Tr/ 27, 893, 898, 924, 931, 1048; *see also* Tr. 1042.

The ALJ characterized Dr. Tzetzo and Dr. Juriga's assessments as "an accurate reflection of [Plaintiff's] most restrictive limitations since his alleged onset date," except that more recent psychiatric treatment notes not reviewed by Dr. Tzetzo and Dr. Juriga, as well as Plaintiff's testimony (which also postdated Dr. Tzetzo and Dr. Juriga's review), justified the further limitations of only occasional interactions with supervisors; only occasional and/or simple changes in the work routine; only simple work-related decisions; and work in segments no longer than two hours. Tr. 35. For example, Plaintiff's hearing testimony described anger issues that limited friendships and caused him to get into fights and arguments with his former bosses and coworkers (Tr. 59-60), and mental health treatment records noted his issues with anger, frustration, and forgetfulness (Tr. 997) and his increased anxiety, depression, and anger due to pandemic-related isolation (Tr. 1012). However, mental health treatment records also noted improvement in symptoms when Plaintiff started medication and stopped working a job in which he was required to interact with a lot of people. Tr. 975.

Plaintiff contends that the mental RFC finding was erroneous because it diverged from the opinions of Dr. Tzetzo and Dr. Juriga, even though the ALJ had found their findings to be more

persuasive than Dr. Deneen's opinion. *See* ECF No. 8-1 at 15-17. Once again, this argument fails, because, as noted above, the RFC finding is not meaningfully inconsistent with the state agency consultants' opinions, and the ALJ was not required to craft an RFC that mirrored a medical opinion and was not bound to adopt the entirety of any opinion. *See Schillo*, 31 F.4th at 78.

In making his argument, Plaintiff points to the consultants' more detailed findings that he was moderately limited in several skills within the four basic areas of mental functioning. *See* ECF No. 15-16 8-1 (citing Tr. 87-89, 107-08). However, upon review, the Court finds that the ALJ's step two findings of overall moderate limitation in each of the basic mental functions are not inconsistent with state agency consultants' findings regarding Plaintiff's aptitude in certain specific skills. *See* Tr. 27-28, 87-89, 107-08. Moreover, the mental RFC includes specific limitations to address each deficient functional area. *See* Tr. 28. For example, Plaintiff's deficiencies in understanding, remembering, and applying information, were accommodated by the limitation to simple, routine tasks and simple work-related decisions; his deficiencies in concentrating, persisting, or maintaining pace were accommodated by the limitation to simple, routine tasks, simple work-related decisions, in two-hour blocks of time; his deficiencies in interacting with others were accommodated by the limitation to only occasional interactions with supervisors; and his deficiencies in adapting and managing himself were accommodated by the limitation to only occasional, simple changes in the work routine. Tr. 27-28.

In identifying Plaintiff's mental deficiencies and the corresponding adjustments needed in the workplace, the ALJ made reasonable findings of fact that, as discussed above, are supported by substantial evidence. Plaintiff has not shown, as is his burden, that the findings are insufficiently supported, and that a reasonable factfinder could never uphold them. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (The Commissioner's findings of fact must be upheld unless "a reasonable factfinder *would have to conclude otherwise*.") (emphasis in original).

Plaintiff goes on to split hairs over the ALJ's alleged failure to accommodate the state agency consultants' opined limitations in certain specific skills, such as arguing that the ALJ should have included an allowance for off-task time in the RFC. *See* ECF No. 8-1 at 16. Plaintiff further argues that the state agency consultants' finding of moderate limitations in the ability to sustain an ordinary routine without special supervision was preclusive of the ALJ's specification of occasionally interacting with supervisors. *See id*.  These arguments are unavailing.

First, as previously discussed, the mental RFC finding was supported by substantial evidence, including medical opinion evidence, providers' observations, and Plaintiff's own statements. Furthermore, where, as here, the RFC finding is supported by substantial evidence, it need not mirror any particular medical opinion—and the RFC certainly need not match the rating given to each and every individual mental functioning skill addressed in the opinion. *See, e.g.*, *Schillo*, 31 F.4th at 78.

Finally, Plaintiff's arguments alleging *potential* conflicts between specific skills itemized in the functional categories and the RFC finding are purely speculative.  *See* ECF No. 8-1 at 16. Plaintiff has not shown that any of these potential conflicts apply in this case. *See id*. For example, "special" supervision could coexist with only occasional interaction with supervisors, such as with remote or electronic monitoring that minimizes contact between employee and supervisor. Similarly, working on tasks for two-hour periods is not automatically ruled out by Plaintiff's moderate limitations in maintaining attention and concentration for extended periods, completing a normal workday and workweek without interruptions from psychologically-based symptoms, and performing at a consistent pace without an unreasonable number and length or rest periods. Tr. 28. Notably, no medical opinion in the record specified that Plaintiff required an off-task limitation in the workplace. Since Plaintiff has not shown that he could not perform the tasks set forth in the RFC finding, the potential conflicts he identifies remain theoretical.

Moreover. as previously noted, Plaintiff bears the ultimate burden of proving that he was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the entire record, including physical examination and other objective findings, Plaintiff's testimony about his symptoms, his reported daily activities, and the opinions of consultative and treating medical sources., and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

**CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_Don D. Bush_
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE